IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DANIEL YOUNG and ) | |
| BARBARA YOUNG, ) | |
| ) | |
| Plaintiffs, ) | |
| v.          ) | 5:04-cv-00594-JEO |
| ) | |
| TENNESSEE VALLEY AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiffs Daniel Young and Barbara Young ("the plaintiffs") initiated this action against the Tennessee Valley Authority ("TVA") following injuries to Daniel Young while he was working at the TVA facility at Browns Ferry Nuclear Reactor. (Doc. 1).[1] Count One of the complaint alleges negligence, willfulness, and wantonness claims. Count Two alleges a loss of consortium claim on behalf of Barbara Young. Presently before the court are the motions for summary judgment by all parties. (Doc. 14 & 19). The issues have been fully briefed by the parties. Upon consideration, the court finds that the defendant's motion for summary judgment is due to be granted and the plaintiffs' motion is moot.

### FACTUAL SUMMARY[2]

### The Contract

TVA is a corporate agency and instrumentality of the United States. Since 1996, Stone and Webster Engineering Corporation, Inc. ("S&W"), has provided modification and

---

[1] References to "Doc.__" are to the numbers assigned by the Clerk of the Court to a particular pleading. References herein to "Ex.__" are to the exhibits attached to each document in a pleading. References to "p. __" are to the page.

[2] The facts set out below are gleaned from the parties' submissions and are viewed in the light most favorable to the non-moving party. They are the "facts' for summary judgment purposes only. They may not be the actual facts. *See Cox administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia,* 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

supplemental maintenance services at TVA's three operating nuclear plants under a TVA contract. (Short Dec. at ¶¶ 2-3).[3] S&W is to provide "qualified support personnel in order to perform a broad range of staff augmentation functions" when requested. (*Id.*, Ex. 1 at p. 11).[4]

Concerning the nature of the employment, section I-1.D. of the contract provides in pertinent part:

> All work activities of Contractor-furnished support personnel shall be performed under the direction, supervision and control of TVA, and TVA shall be responsible for the request and directions issued by employees of TVA to Contractor's and its subcontractors' employees providing support services to TVA hereunder:
>
> 1.   TVA shall be solely responsible for the acts or omissions of support personnel, during their assignment to TVA; provided however that it is expressly understood that such personnel shall continue as Contractor's or its subcontractor's employees, as the case may be, and shall not become employees of TVA. Contractor or the subcontractor concerned, who is the employer, shall be responsible for the payment of the employees' salaries or wages, payroll taxes, and employee benefits, and for maintaining workers' compensation and comprehensive liability insurance coverages . . . .
>
>      . . . .
>
> 3.   TVA shall be responsible for providing appropriate working space and support facilities for support personnel that are comparable to those provided to TVA employees and for advising such personnel of TVA's specific rules, regulations, and safety procedures that will apply to the personnel's [sic] specific work activities.
>
>      . . . .
>
> 5.   TVA shall have the right to reject any assigned support personnel determined not to be qualified to perform the assigned work. . . .

---

[3] Short's Declaration is located at document 16 in the record.

[4] Page number cites are to the bold numbers added in the lower right hand corner of the document.

(*Id*. at pp. 11-12).

The contract also provides that craft labor workers will be paid specific minimum wage and benefits as required by TVA's Project Maintenance and Modification Agreement with the unions comprising the Tennessee Valley Trades and Labor Council. (*Id*. at pp. 17-20 and attachment A at 99-185; see also contract supplement Nos. 1-4, 6, and 9-10 at 251-431, and 436-555). TVA reimburses S&W for all hourly wages, benefits, pension contributions, and any payroll taxes required by law, in accordance with the relevant labor agreements. (*Id*. at pp. 20-21). In addition, TVA has agreed to provide worker's compensation coverage to S&W employees working under this contract. (*Id*. at p. 50). TVA provided the worker's compensation insurance through TVA's plan administrator, Zurich Insurance Company. (Harkleroad Dec. at ¶ 3).[5]

## The Accident

On March 26, 2002, Daniel Young was a S&W employee. (Young Dep. at 25).[6] On that day, Young was assigned as one of the augmentation staff workers pursuant to the contract between TVA and S&W. (*Id*. at pp. 43-47). His assignment consisted of aiding TVA workers in performing grounding work on breaker cubicles during a scheduled unit maintenance outage. (*Id*. at pp. 43-47; 51-52). Unit maintenance outages at TVA's nuclear plants are part of the normal maintenance of the plants and are done approximately every eighteen months to two years. (Brown Dep. at pp. 112-13).[7] The installation of safety grounds in circuit breaker cubicles

---

[5]Victoria Harkleroad's declaration is located at document 17.

[6]The deposition of Daniel Young is located at document 21, exhibit 4.

[7]The deposition of Steven Brown is located at document 21, exhibit 5.

is a regular part of the work done at the beginning of a unit maintenance outage. (Brown Dep. at pp. 112-13, 116-17; Young Dep. at pp. 29-30, 43-44, 68; Goodwin Dep. at pp. 21-27, 48-49, 51-52, 63-69, 95-97; 105-06, 119-20).[8]

In order to install safety grounds on the circuit breaker cubicles, the breakers have to be removed from the cubicle. (Minyard Dep. at p. 21).[9] After the breakers are removed, the back of the cubicle exposes two "buses" with two rows of three "stabs" on each. (Doc. 21, Ex. 3 at p. 6; Ex. 2 at p. 739). Buses are rectangular aluminum bars, which have the stabs welded on them. When the breaker is removed, the top row of three stabs is energized; the bottom row is not. On the day of the accident, the following safety devices, which the plaintiff alleges would have prevented the accident, were not in use:

1. Safety shutters that drop into place to cover the exposed buses when the breaker is removed from the breaker cubicle (Doc. 21, exhibit C; Brown Dep. at pp. 43-44; Goodwin Dep. at pp. 85-86; Minyard Dep. at pp. 20-21);

2. Grounding carts that prevent humans from coming into contact with live electricity by keeping them out of the cubicle (Brown Dep. at 44-45; Goodwin Dep. at pp 86-87); and,

3. Full safety shields that are plexiglass shields used to cover the live stabs while the shutters are raised (Goodwin Dep. at pp. 73-75; Minyard Dep. at pp. 16-18).

At the time of the accident, Young was working alongside three TVA workers, David Letson, Ed Minyard, and Fred Pendergrass, and was supervised by a TVA foreman, Roger Goodwin. Goodwin conducted a pre-job briefing and was to instruct the men on how to perform

---

[8]The deposition of Roger Goodwin is located at document 21, exhibit 6.

[9]The deposition of Edward Minyard is located at document 21, exhibit 7.

the circuit breaker grounding. (Young Dep. at pp. 81-83, 87-88).

The accident occurred after the men had removed the breakers from the cubicle. David Letson was attempting to attach a grounding cable to one of the de-energized stabs but mistakenly got it near or attached to one of the energized ones, resulting in an electric arc flash which burned all four crew members. The plaintiff sustained significant injuries as a consequence of the accident.

Young sought and received compensation for his injuries pursuant to the Alabama Workers' Compensation Act ("AWCA"). *See* ALA. CODE §§ 25-5-1, *et seq*. Thereafter, he filed this action alleging that TVA's willful and wanton actions proximately caused his injuries.

## SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of

some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id*.

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 643 (11th Cir.

1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only the benefit of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 643.

## DISCUSSION

The AWCA's employer immunity provision provides that no employer "shall be held civilly liable for personal injury . . . to the employer's employee . . . whose injury . . . is due to an accident . . . which . . . originates in the employment." ALA. CODE § 25-5-53. In addition, it provides immunity from civil liability "for all causes of action except those based upon willful conduct . . . [by a] governmental agency providing occupational safety and health services."

(*Id*.).

The plaintiffs are seeking compensation for the injuries to Daniel Young and for loss of consortium for Barbara Young.  The plaintiffs allege that willful actions of TVA employees and agents caused the injuries to Daniel Young.  Because the injuries were caused by willful actions, they argue that the exclusivity clause of the AWCA does not protect TVA against liability in this case and that they are entitled to summary judgment.[10]  (Doc. 20 at pp. 6-9).  They based this assertion on the second part of § 25-5-53 of the AWCA, which provides that government agencies providing health and safety services may be sued for willful conduct.  ALA. CODE § 25-5-53.  They further argue that it would be against public policy to grant TVA complete immunity in this case because it would leave S&W employees without recourse if they are injured in a TVA facility.  (Doc. 22 at p. 5).

The defendant has filed a motion for summary judgment, arguing that it is a "special employer" under Alabama law and it should be treated the same as a regular employer for purposes of the exclusivity provisions of the AWCA.  (Doc. 15 at p. 6).  It argues that TVA is protected from all additional civil liability in this case, including any injuries that resulted from purportedly willful actions.  (Doc. 15 at p. 6).

The court will first address the defendant's summary judgment motion as the court finds it is dispositive of this case.

## Immunity Argument

As just noted, the defendant argues that it is a "special employer" and the exclusivity

---

[10] The plaintiffs' motion is premised on the allegation that the defendant removed safety devices previously noted herein.

provision of the AWCA bars all of plaintiffs' claims, even those premised on willful conduct. (Doc. 15 at 6).  The plaintiffs counter that under the AWCA, a federal agency providing occupational health and safety services can be subject to civil suit when the injury was caused by its willful conduct.  The AWCA provides in pertinent part as follows concerning third party liability:

> If the injury or death for which compensation is payable under Articles 3 and 4 of this chapter was caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, whether or not the party is subject to this chapter, the employee, or his or her dependants in case of death, may proceed against the employer to recover compensation under this chapter or may agree with the employer upon the compensation payable under this chapter, and at the same time, may bring an action against the other party to recover damages for the injury or death, and the amount of the damages shall be ascertained without regard to this chapter.  If a party other than the employer . . . is a governmental agency providing occupational safety and health services . . . the injured employee, or his or her dependant in case of death, may bring an action against . . . the government agency . . . only for willful conduct which results in or proximately causes the injury or death . . .

ALA. CODE § 25-5-11.  Additionally, as noted above, the AWCA provides the following employer immunity:

> . . . . no employer shall be held civilly liable for personal injury to or death of the employer's employee, for purposes of this chapter, whose injury or death is due to an accident or to an occupational disease while engaged in the service or originated in the employment.  In addition, immunity from civil liability for all causes of action except those based upon willful conduct shall also extend to . . . a governmental agency providing occupational safety and health services.

ALA. CODE § 25-5-53.

It is well-settled that "[t]he exclusive remedy provision extends to 'special employers,' which have been described as 'individuals or businesses who, for practical purposes, may be considered primary or co-employers of the injured employee.'" *Gaut v. Medrano*, 630 So. 2d

362, 364 (Ala. 1994), citing *Rhodes v. Alabama Power Co.*, 599 So. 2d 27, 28 (Ala. 1992) (quoting *Tweedy v. Tennessee Valley Authority*, 882 F.2d 477, 479 (11th Cir. 1989)). The test for determining whether the defendant is a special employer in the circumstances is also well-settled. In *Tweedy*, the court stated:

> In order to qualify as a special employer for "exclusive remedy" purposes: (1) the employee must have made an express or implied contract of hire with the special employer; (2) the work being performed by the employee essentially must be that of the special employer; and (3) the special employer must have the right to control the details of the employee's work. *Terry* [*v. Read Steel Products*, 430 So. 2d 862, 865 (Ala. 1983)]; *accord* 1C A. Larson, The Law of Workmen's Compensation § 48.00 (1986).

*Tweedy*, 882 F.2d at 479.

Applying the foregoing to the present case, the court finds that the defendant is a special employer entitled to the immunity provided by the Alabama "exclusive remedy" provisions. In *Tweedy*, the court had to decide whether Tweedy, who was injured at a TVA facility, was precluded from suing TVA due to the fact that it was a "special employer." The facts showed that

> . . . . Gilbert/Commonwealth, Inc. ("Gilbert"), entered into a staff augmentation contract wherein it agreed to provide "personnel to perform general engineering . . . services related to TVA's nuclear . . . power plants in accordance with criteria, procedures, and scheduling requirements established by [TVA]." Under the contract, Gilbert was to provide personnel to work under TVA's supervision to supplement TVA's regular engineering staff at the Browns Ferry Nuclear Plant ("BFNP").
>
> The contract also provided (1) All Gilbert employees performing work on TVA's premises must meet citizenship requirements, undergo a medical examination, and submit to a security investigation identical to that of a regular employee; (2) TVA promises (a) to reimburse Gilbert for the wages it paid to employees providing services to TVA and (b) to pay a fixed percentage of the wages for overhead expenses; (3) Gilbert promises to provide for worker's compensation insurance out of the money it receives from TVA; and, finally, (4) TVA reserves the right to control the work performed by Gilbert supplied

workers . . . .

>   Tweedy applied for work at BFNP in the field of engineering section on December, 1986. Initially, two TVA managers interviewed Tweedy and then referred him to Gilbert for employment. Thereafter, he was processed through TVA's personnel, health physics, medical and other offices, and attended its training classes (including courses in industrial safety requirements for entering nuclear contaminated zones). Tweedy then began working as an engineering aide, on Gilbert's payroll, but under the supervision of TVA employees.

After discussing the holdings in various state court decisions, including *Terry*, *Pettaway v. Mobile Paint Mfg. Co.*, 467 So. 2d 228 (Ala. 1985), *Marlow v. Mid South Tool Co.*, 535 So. 2d 120 (Ala. 1988), and *Bechtel v. Crown Central Petroleum Corp.*, 495 So. 2d 1052 (Ala. 1986), the Eleventh Circuit Court of Appeals affirmed the trial court's dismissal of the action, stating:

>   . . . . First, we note that the contract between Gilbert and TVA clearly provides: "All work done by contractor hereunder shall be reviewed by TVA and subject to TVA approval. TVA shall retain overall responsibility for the technical adequacy of the work when such work is performed under TVA supervision." Second, while Tweedy's affidavits suggest that Gilbert employees worked in Tweedy's area and exercise limited supervisory functions over his work, substantial evidence eliminates any genuine dispute concerning Tweedy's submission to the control and supervision of his TVA supervisor, Presley. Tweedy received his day-to-day assignments from Presley. Further, to the extent that any Gilbert co-workers may have exercised any limited supervisory authority over Tweedy, this was only at the behest of Presley. The "control" that the "special employer" must assume need not be extended to the technical details of a skilled employee's activities. To hold otherwise would tend to strip skilled workers of the protection of workmen compensation acts. *See* 1C A. Larson, *supra*, § 48.30 at 8-502. Additionally, TVA furnished Tweedy with all the equipment needed to perform his job, including his uniforms. TVA had the right to fire Tweedy. The control necessary to invoke the "special employer" doctrine has been demonstrated by evidence not subject to genuine dispute.

*Tweedy,* 882 F.2d at 480.

When examining the text of the statutes at hand, it is clear that all employers are exempt from liability in cases where the injury was related to the employee's work. The pertinent part of

§ 25-5-53 of the Alabama Code states:

> No employer shall be held civilly liable for personal injury to or death of the employer's employee, for purposes of this chapter, whose injury or death is due to an accident or to an occupational disease while engaged in the service or business of the employer, the cause of which accident or occupational disease originated in the employment.

It is also clear that the legislature intended to exempt other groups, in addition to employers, from some of the liability. The second part of § 25-5-53 states:

> In addition, immunity from civil liability for all causes of action except those based upon willful conduct shall also extend to . . . a governmental agency providing occupational safety and health services.

The text in § 25-5-11 of the Code also supports the same conclusions:

> If a party other than the employer . . . is a governmental agency providing occupational safety and health services . . . the injured employee, or his or her dependant in case of death, may bring action against . . . the government agency . . . only for willful conduct.

In accordance with this language it is clear that an employer or "special employer" is exempt from civil liability if the employee's injuries occur while he is engaged in the service or business of the employer. Additionally, it seems equally as clear that the immunity presented in the second part of the statute was created to protect government agencies providing occupational safety and health services, in cases where those agencies did not have an employer-employee relationship with the injured party.

  The plaintiffs' argument that the defendant can be held liable for its willful actions in the present circumstances is not supported by precedent. To the extent that the plaintiffs' rely on the decision in *Kirby v. Tennessee Valley Authority*, 877 F. Supp. 578 (N.D. Ala 1994), this court finds that case inapposite. The question confronting the court in that case was whether the

plaintiff's complaint stated a claim against TVA when the claim for relief was

> based **of necessity** upon allegations that TVA had or assumed duties to employees of Stone & Webster working at TVA's Browns Ferry nuclear facility to provide such Stone & Webster employees various occupational safety and health services [making safety inspections, providing safety training, providing safety equipment, providing safety procedures and warning of safety hazards].

*Kirby*, 877 F. Supp. at 587 (bold in original).  Kirby was injured after a fall inside of a TVA facility.  At the time of the injury, Kirby was an employee of S&W and was performing work for S&W on a TVA project.  Kirby and his wife brought suit against TVA based on allegations that it negligently failed to adopt and use methods and processes adequate to render Kirby's employment reasonably safe.  TVA filed a motion to dismiss the complaint, asserting that it could be held liable "**only for willful conduct**, *which is not alleged by the plaintiffs in their complaint herein*."  *Kirby*, 877 F. Supp. at 579 (bold and italics in original).  The court granted the motion to dismiss stating as follows:

> A reasonable construction of the allegations of the Plaintiffs' complaint in the above-entitled civil action is that at the time and place in question, that is on June 25, 1992 at TVA's Browns Ferry Nuclear Power facility in Limestone County, Alabama where Plaintiff Vernon Kirby was working and was injured while he was an employee of Stone & Webster performing work for his employer, Defendant TVA was a governmental agency then and there and prior thereto providing [**according to Plaintiffs' complaint**] occupational safety and health services to Stone & Webster employees, including the Plaintiff Vernon Kirby.[11]  And this Court now so holds and further holds for the reasons hereinabove stated that under

---

[11] Footnote two in the opinion provides:

> Able counsel for Plaintiffs argues in brief opposing TVA's 12(b)(6) motion that TVA is not in the business of providing "occupational safety and health services" and was created for the primary purpose of promoting [improving] navigation and controlling floods.  While TVA was admittedly not created by Congress for the principal purpose of providing occupational safety and health services, there is indeed no reason why it cannot provide occupational safety and health services not only to its own employees but also to the employees of independent contractors engaged in performing contract work for TVA on TVA owned property.  As a matter of fact Plaintiffs' own complaint alleges that it did so in the civil action now before the Court.

*Kirby*, 877 F. Supp. at 588 n.2.

> applicable statutory law[12] that TVA can be held liable in this case only for **willful conduct, which is not alleged in Plaintiffs' complaint. Thus, the complaint in the above-entitled civil action and each count thereof fails to state a claim upon which relief can be granted**.

*Kirby*, 877 F. Supp. at 588-89. In sum, the court held that a federal agency providing occupational health and safety services can be held liable only for willful conduct, which was not alleged in plaintiff's complaint. *Id.* at 589. Accordingly, the complaint had to be dismissed without prejudice to the plaintiffs' right to refile the same with the requisite allegations of willfulness.

*Kirby* does not stand for the proposition that TVA cannot be a special employer. To the contrary, the court made it clear that its decision was premised on the fact that the complaint failed to allege willfulness in a situation where the plaintiff claimed that the right to recovery was premised on the fact that TVA was sued because it provided occupational safety and health services. Whether TVA was a "special employer" was not at issue in that case.[13]

---

[12]Footnote three in the opinion provides:

> In arriving at the legislative intent in enacting the statute regarding the liability of a party other than the employer for an employee's injuries, as codified in § 25-5-11, Code of Alabama 1975, as amended, every part of the statute as disclosed by its context and spirit will be given consideration. *Harris v. Louisville & N.R.R.*, 237 Ala. 366, 186 So. 771 (1939). There appear to be no reported cases construing the pertinent portions of §§ 25-5-11 and 25-5-53, Ala. Code, as amended, *ante*, pp. 22-23, relied upon by TVA in its brief and argument submitted in support of its Rule 12(b)(6) motion to dismiss in this case. This United States District Court has therefore interpreted these Alabama statutes to mean exactly what they say in applying their highlighted [emphasized] portions to the allegations of Plaintiffs' complaint.

*Id*. at 588 n.3.

[13]To the extent that the plaintiffs assert that the defendant's argument that a "special employer" in its situation (that is, a government agency "special employer" that is also providing safety services) is shielded from willful conduct "is not bolstered by any applicable case law or by the plain language of the statute," the court disagrees. (Doc. 25 at p. 2). In *Ex parte Progress Rail Services Corp*., 869 So. 2d 459, 461-62, 473 (Ala. 2003), the court was presented with the issue of whether the family of an employee of the defendant company that dies as a result of an accident can bring a tort action for willful failure to provide a safe work place when there had been recovery under the AWCA. The court held that the defendant company was entitled to complete immunity under the AWCA. *Id*. at 473. In *Ex parte McCartney Const. Co*., 720 So. 2d 910 (Ala. 1998), the plaintiff sued the defendant company and a co-employee for damages premised on the allegation that they willfully failed to provide him with a safe workplace. *Id*. at 910. The court held that the employer company was entitled to immunity under the AWCA exclusivity provision. *Id*. at 911. Similarly, in *Padgett v. Neptune Water Meter Co., Inc.,* 585 So. 2d 900 (Ala. 1991), the court affirmed entry of summary judgment for the company employer in a case where the plaintiff alleged that his supervisors intentionally

Having addressed the legal contentions of the parties, the court must now examine the facts before it to determine if the defendant is entitled to summary judgment. The fact that TVA is a governmental agency which provided health and safety services does not preclude it from invoking its right to immunity from liability in its capacity as a "special employer" under §§ 25-5-11 & 25-5-53. If TVA is found to be a "special employer," there is no reason to treat it differently than any other employer. Therefore, if TVA is a "special employer," it is exempt from all liability and summary judgment should be granted.

As noted above, the criteria require that the evidence show that Young (1) made a contract for hire, either express or implied, with TVA; (2) that the work he did was essentially that of TVA; and (3) that TVA had the right to control the details of his work. TVA must demonstrate that there is no genuine issue of material fact with respect to these three elements to be granted summary judgment.

The last two elements are easily satisfied under the following facts. First, Young's work at TVA involved assisting other individuals that were conducting maintenance work on TVA's electric equipment, which was a normal part of the work performed by TVA. Second, it was preformed on TVA's equipment on the site and under the supervision of Goodman, a TVA employee. Third, it is undisputed that TVA had the right to control the details of the plaintiff's

---

injured him by forcing him to work despite knowing that it was against his doctor's orders. *Id*. at 901. The court affirmed the summary judgment order, finding that it was precluded by the AWCA. *Id*. Lastly, in *Means v. International Sys. Inc.*, 555 So. 2d 142 (Ala. 1989), the plaintiff brought an action against the defendant employer after a co-employee "intentionally" hit him with a bucket of concrete. *Id*. at 143. Finding that the plaintiff was a "special employee" under the AWCA, it held that the defendant company was immune from tort liability. *Id*. at 146. As discussed below, TVA is a "special employer" under the circumstances and the plaintiffs' tort claims are therefore precluded under the provisions of the AWCA.

The court's determination on this issue is not altered by the plaintiffs' arguments that assert that the willfulness is based upon the removal and or modification of certain safety features on the equipment. The court finds that to so find would be inconsistent with the exclusivity provisions of the AWCA.

work.  The relevant contract provides that the work activities of S&W staff augmentation workers would be "performed under the direction, supervision, and control of TVA."  (Short Dec., Ex. 1 (Contract) at p. 11).  It further provides that TVA personnel shall supervise all S&W employees working as staff augmentation personnel.  (*Id*. at p. 95).  Fourth, TVA conducted the initial briefing in this instance and assigned the relevant tasks.  Fifth, it provided the safety equipment to be used by the individuals.  Additionally, TVA had the right to dismiss any augmentation employee if he or she did not meet TVA's standards.  Although termination was ultimately within the discretion of S&W, TVA could preclude the individual from working at the facility.  (Brown Dep. at pp. 125-26, 131).  The court finds that this is sufficient to meet the requirements of the second and third elements for purposes of the present matter.

  The arguably more difficult issue is whether Young made a contract of hire with TVA. There has been no evidence by either of the parties that Young entered into an express contract of hire with TVA.  Therefore, the court must determine whether Young and TVA had an implied contract based on the circumstances.  The defendant asserts that he did premised on the fact that when the plaintiff "reported to TVA on March 25, 2002, to work on the Unit 3 Cycle 10 outage, he was for all practical purposes in the hire of TVA."  (Brief at p. 7).  In support of this conclusion, they cite the deposition testimony of the plaintiff where he stated that he recognized that when he went to TVA and worked for Goodman on this project, he was serving as staff augmentation and that he would be under the authority and control of Goodman.  (*Id*. at p. 8 citing Young Dep. at pp. 44-47, 51-52, 119-22, 166).

  The court finds the evidence shows that there was an implied contract between the plaintiff and TVA.  The defendant set the plaintiff's wages pursuant to the contract and union

schedules; it paid S&W for Young's wages; covered his worker's compensation; supervised and controlled his activities; made his assignments; approved the time sheets that were submitted to S&W (Brown Dep. at 121-24); provided safety equipment and tools, including ear-plugs, gloves, a hard hat and safety glasses (Young Dep. at pp. 116-17; Brown Dep. at pp. 118-19);[14] Goodwin conducted the initial briefing on the job to be performed; Goodwin was to guide and direct the work;[15] and TVA could terminate the plaintiff's employment at the TVA facility.[16] The facts in the present case are sufficiently similar to those in *Tweedy* to warrant the granting of the defendant's motion.[17]

Because this court finds that TVA is a "special employer" and that as "special employer" it is entitled to the immunity provided for by Alabama Code § 25-5-53 as a matter of law, the plaintiffs' motion for summary judgment need not be further addressed.

To the extent that the plaintiff argues that if TVA's argument succeeds in this case, there would never be an instance where an employee of S&W could sue TVA for willful conduct (doc. 22 at p. 5), the court finds that argument insufficient to warrant a different result. The effect, the plaintiff argues, would be to "safety at TVA," which is "against the public good and public policy" (*id.*). The court disagrees. Although the plaintiff does not have a cause of action apart

---

[14] In addition, the crew working with Young that morning also gathered a fireproof jacket and a face shield issued by TVA. (Young Dep. at pp. 71-72).

[15] The plaintiff testified that he and the others had not done this work before and therefore Goodwin told him that he would be there with them to guide their work. (Young Dep. at pp. 81-82).

[16] The court's conclusion that there was an implied contract in this instance is further supported by the fact that the plaintiff testified that he had been told that he was going to be laid off by S&W unless he took the TVA job. (Young Dep. at 58).

[17] Although the evidence indicates that S&W did the hiring, TVA had the ultimate say as to whether a candidate would work at TVA. TVA could reject any candidate that did not meet its requirements under the provisions of its contract with S&W. (Short Dec., Ex. 1 at pp. 11-12).

from the Alabama workers' compensation statutes, that is the remedy the Alabama legislature enacted to redress incidents such as the one presented herein. In this case, that remedy has resulted in the payment of $181,086.00 in benefits by TVA's insurance carrier. (Harkleroad Dec. at ¶ 3). It is not within this court's authority to scrutinize the adequacy or inadequacy of that sum under the circumstances.

## CONCLUSION

Premised on the foregoing, the court finds that the defendant's motion for summary judgment (doc. 14) is due to be granted. The plaintiffs' motion for summary judgment (doc. 19) is moot. Accordingly, this action is due to be dismissed. An appropriate order will be entered.

**DONE**, this the 5th day of August, 2005.

_/s/ John E. Ott_
**JOHN E. OTT**
United States Magistrate Judge